# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>v.<br><br>Deandrae Devon Poe,<br><br>                Defendant. | Case No. 15-cr-189 (ADM/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

David P. Steinkamp, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for United States of America

Douglas Olson, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Deandrae Devon Poe

HILDY BOWBEER, United States Magistrate Judge

      This case came before the undersigned United States Magistrate Judge for a pretrial motions hearing on August 13, 2015. The case was referred for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court will address Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 22] and Motion to Suppress Statements, Admissions, and Answers [Doc. No. 23] in this Report and Recommendation. The parties' nondispositive motions were addressed in a separate Order [Doc. No. 33]. For the reasons set forth below, the Court recommends that both motions to suppress be denied.

## I.     Procedural Background

On June 17, 2015, Defendant Deandrae Devon Poe was charged by Indictment with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).  (Indictment at 1 [Doc. No. 1].)  Defendant was convicted previously of Aggravated Robbery.  (*Id.*)

Defendant filed the Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 22] and Motion to Suppress Statements, Admissions, and Answers [Doc. No. 23] on July 15, 2015.  The Government opposed the motions.  At the August 13, 2015, pretrial motions hearing, the Government submitted an audio recording of a statement Defendant made to Minneapolis Police Sergeant Brian Grahme (Gov't Ex. 1), and a search warrant, affidavit, application, and return (Gov't Ex. 2).  The Government also called Minneapolis Police Sergeant Brian Grahme to testify.  At the conclusion of the hearing, the parties asked for leave to file post-hearing memoranda, and the Court granted their request.  Defendant timely filed his memorandum on August 21, 2015 [Doc. No. 34], and the Government timely filed its memorandum on August 26, 2015 [Doc. No. 35].  The Court took the motions to suppress under advisement at that time.

## II.    **Defendant's Motion to Suppress Evidence Seized Pursuant to the Warrant**

The search warrant at issue was signed on April 23, 2015, by the Honorable Thomas Fraser, Hennepin County District Court.  (*See* Gov't Ex. 2.)  Sergeant Grahme provided the affidavit in support of the warrant.  Defendant seeks to suppress evidence seized pursuant to the warrant on the ground that the supporting affidavit did not establish probable cause to believe that a firearm would be located at the premises searched.

A.  **Facts Set Forth in the Supporting Affidavit**

Sergeant Grahme has more than nine years of experience as a law enforcement officer and is assigned to the Weapons Investigation Unit.  He previously worked on the Gang Enforcement Team, where he specialized in gang intelligence, violent crimes, and narcotics and gun offenses, among other duties.

Sergeant Grahme received information that Defendant was a member of the street gang "Young N Tugging" ("YNT") and had posted openly on social media that he possessed a firearm.  A records check revealed that Defendant was a well-documented member of YNT and had multiple weapons arrests and convictions, aggravated robbery arrests and convictions, and narcotics convictions.  Sergeant Grahme also learned that Defendant had been shot twice in 2015 in gang-related shootings, most recently on April 11, 2015, and that the potential for retaliation by Defendant was high.

During further investigation, Sergeant Grahme discovered that Defendant was in a relationship with Shelia Shell ("Shell"), who lived at 8xxx Zane Avenue North, Apartment 207, in Brooklyn Park, Minnesota.  One of the records located by Sergeant Grahme showed that Defendant also lived at that address.  Sergeant Grahme also learned that Defendant had been stopped by a police officer on April 1, 2015, while driving a vehicle registered to Shell at the 8xxx Zane Avenue North address.

Sergeant Grahme knew that Defendant used the nickname "Squizzie," and he located a public Facebook page in the name of "Bout'ahBag Squizzie."  Sergeant Grahme saw Defendant's photograph and birthdate on the page, as well as photographs of Shell and postings from her Facebook page.  Based on this and other information on the page,

Sergeant Grahme was certain the "Bout'ahBag Squizzie" page belonged to Defendant.

According to Sergeant Grahme's affidavit, Defendant posted the following messages on his Facebook page on April 16, 2015:

- "THESE NIGGAZ . . . WANT ME DEAD SO I GOTTA KEEP MY (picture of eyes) OPEN ND KEEP MY (picture of handgun) KLOSE BY NO TELLIN WHO WANT ME GONE TRY ME IF YOU STUPID IM STRAPPED TOO . . . ."
- "PRAYERS TO BABY GIRL ND HER FAMILY WHO GOT SHOT BY ROBBINSDALE POLICE TODAY"
- "THIS GUNNA B THE YEAR A (picture of a police officer) GUNNA DIE THEY DOIN TOO MUCH JUST SHOT A 12 YR OLD GIRL . . . ."

Based on his training and experience, Sergeant Grahme knew that "strapped" is slang for having a gun.

With the seventy-two hour period before Sergeant Grahme applied for the warrant, he observed Defendant arriving and departing from 8xxx Zane Avenue North in the car registered to Shell. Defendant was the only occupant in the car, and it appeared he let himself in and out of the apartment.

### B.    Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. To that end, every search warrant must be supported by probable cause and describe with particularity the place to be searched and the items or persons to be seized. *Id.* The task of a judge presented with a search warrant is "to make a practical,

common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  As the very term implies, probable cause "deal[s] with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

A court reviewing a previous determination of probable cause must give "great deference" to the issuing judge's assessment.  *Gates*, 462 U.S. at 236 (quotation omitted). If the issuing judge "relied solely on the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (quotation and internal quotation marks omitted).  The affidavit must establish a "nexus . . . between the item to be seized and criminal behavior," *Warden v. Hayden*, 387 U.S. 294, 307 (1967), and a nexus between the contraband and the place to be searched, *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).  "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *Etheridge*, 165 F.3d at 657.

The Court finds that Sergeant Grahme's affidavit established a fair probability that a firearm would be located at the 8xxx Zane Avenue North apartment.  The affidavit set forth Sergeant Grahme's general training and experience in investigating weapons and gangs, and his investigation of Defendant.  The affidavit described Defendant's

5

membership in the YNT street gang and relayed that he was a convicted felon. According to information Sergeant Grahme obtained and set forth in the affidavit, Defendant had been shot recently in two gang-related shootings, and there was a high chance he would retaliate. The affidavit further described Defendant's postings on Facebook, in which Defendant indicated he had a handgun and would be keeping it on or near him. This information provided the issuing judge with recent information that Defendant possessed a firearm and intended to use it, both of which could constitute criminal activity. Thus, the requisite nexus between the item to be seized and criminal behavior was well-established.

      The affidavit also described Defendant's connections to the 8xxx Zane Avenue apartment. Not only did Defendant's girlfriend live there, but a record located by Sergeant Grahme showed that Defendant also lived there. In addition, Defendant was known to drive his girlfriend's car, which was registered to her at the 8xxx Zane Avenue North address. Less than seventy-two hours before the search warrant was obtained, Sergeant Grahme observed Defendant driving to and from the apartment in his girlfriend's car, and entering and exiting the apartment at will. These facts firmly link Defendant to the 8xxx Zane Avenue apartment, and, in turn, establish a nexus between the apartment and any firearm Defendant possessed or was keeping close by. *See United States v. Green*, 634 F.2d 222, 226 (5th Cir. 1981) ("The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless

6

maintained."). Given the nature of the crime—possession of a firearm—and Defendant's connections to the 8xxx Zane Avenue apartment, there was a reasonable and logical likelihood that a firearm would be located there.

Accordingly, the Court concludes that the issuing judge correctly determined there was a fair probability that a firearm would be found at the 8xxx Zane Avenue apartment. Defendant's motion to suppress evidence seized pursuant to the warrant should be denied.[1]

### III.   Defendant's Motion to Suppress Statements

Defendant filed a motion to suppress the statement he gave to Sergeant Grahme on April 30, 2015, the day after the execution of the warrant and Defendant's arrest. The Court advised the parties at the hearing that any issue not addressed in the post-hearing memoranda would be deemed waived. Defendant did not address the motion to suppress

---

[1] In the event the Court did not find sufficient probable cause for the warrant, Defendant argued that the good faith exception to the exclusionary rule created by *United States v. Leon*, 468 U.S. 897 (1984), would not apply. The Court disagrees. There is no indication that (1) the issuing judge was misled by information in the affidavit that Officer Grahme knew or should have known was false; (2) the issuing judge "wholly abandoned his judicial role" such that "no reasonably well trained officer should rely on the warrant;" (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) the search warrant itself was so facially deficient that it could not reasonably be presumed valid. *Id.* at 923 (citations and quotation omitted).

Furthermore, although a nexus must exist "between the contraband and the place to be searched . . . an officer executing a search warrant may rely in [sic] the permissibility of the issuing judge's inference that such a nexus exists when that inference has common sense appeal." *United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012) (internal quotations and quotation marks omitted). Here, as a matter of common sense, it was reasonable to infer that Defendant was storing a firearm at the 8xxx Zane Avenue apartment.

In sum, the Court concludes that the officers executing the warrant acted in good faith, and their reliance on the warrant was reasonable.

statements in his post-hearing memorandum. Nonetheless, the Court has listened to the statement recorded on Government Exhibit 1 and considered the testimony of Sergeant Grahme. The recording and testimony are consistent, and the Court finds Sergeant Grahme a credible witness.

Sergeant Grahme interrogated Defendant in an interview room at the Hennepin County Jail at approximately 1:00 p.m. Sergeant Grahme was not wearing a uniform or carrying a firearm. He began the interview by introducing himself and advising Defendant of his *Miranda* rights. Defendant said he understood those rights and agreed to speak with Sergeant Grahme. Defendant did not appear distressed or under the influence of any substances or medication, and he interacted appropriately and cordially with Sergeant Grahme. Defendant never indicated he wanted a lawyer or to stop the interrogation. The recording of the interview ended abruptly because the battery in the recording device expired. The actual interview ended approximately two minutes later. Sergeant Grahme testified that nothing occurred during those two minutes that would change the circumstances of the interrogation. The entire interview lasted approximately twenty minutes.

Under *Miranda v. Arizona*, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). Those procedural safeguards are met when, "[p]rior to any questioning, the person [is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an

8

attorney, either retained or appointed." *Id.* A defendant may waive those rights as long as "the waiver is made voluntarily, knowingly and intelligently." *Id.*

The Government does not dispute that Defendant was subject to a custodial interrogation. The record before the Court demonstrates, however, that Defendant was properly warned, before any questioning, that he had the right to remain silent, that any statement could be used against him, and that he had the right to have an attorney present. The record further demonstrates that Defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Consequently, Defendant's statement to Sergeant Grahme should not be suppressed.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 22] be **DENIED**; and

2. Defendant's Motion to Suppress Statements, Admissions, and Answers [Doc. No. 23] be **DENIED**.

September 2, 2015           s/ *Hildy Bowbeer*
                                                  HILDY BOWBEER
                                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.